Dear Mr. Hughes:
Your request for an Attorney General's opinion has been referred to me for research and reply. Your inquiry essentially seeks to know whether (1) the governing authority of the parish may override decisions of the East and West Ascension Gravity Drainage Districts, and (2) if not, what steps, if any, may the governing authority take to exercise control over parish-wide drainage decisions.
By Act No. 91 of 1948, the Legislature authorized the creation of Consolidated Gravity Drainage Districts in Ascension Parish. The Ascension Parish Police Jury [which is now the Ascension Parish Council] created the East and West Ascension Gravity Drainage Districts ("the drainage districts") on December 7, 1948. Thereafter, on November 4, 1994, and January 10, 1995, respectively, both the West and East Ascension Gravity Drainage Districts and the Ascension Parish Council entered into what they termed an "Intergovernmental Agreement." The drainage districts have been managed through this cooperative agreement between those parties ever since that time.
The question of who has control over the drainage districts in Ascension Parish continues to be a source of concern. Unless one entity takes, assumes or is given responsibility for the operation of the drainage districts, accountability cannot be assigned. Resolution of this matter is mandatory. To decide this issue will require an analysis of Section 4-12 (h) of the Ascension Parish Charter; Act 91 of the 1948 Legislature, the statute that authorized creation of East and West Ascension Gravity Drainage Districts; Article XIV, Section 46, of the Louisiana Constitution of 1921; and Article VI, Section 15, of the Louisiana Constitution of 1974. *Page 2 
As stated above, the Legislature authorized the Ascension Parish Police Jury to create the East and West Ascension Gravity Drainage Districts by authority of Act 91 of 1948. Under the enabling Act, such drainage districts are considered political subdivisions of the State. Act 91 further provides that the officers of the district shall perform such duties as are usually required of corporate bodies. The Act vests the Board of Commissioners with complete control over and primary responsibility for all drainage matters within each district. In short, under the Act each Board is given the "power and authority to do any and all things necessary and incidental to carry out the purposes of this Act."
At the time the Legislature enacted Act 91, the Louisiana Constitution of 1921 was in force and effect. The right of a governing authority to abolish a district that it created was included in Article XIV, Section 46 (A). That Article provided that "[i]n a case where the governing authority of a parish or municipality shall have created or established, or shall hereafter create or establish, any board, commission, agency, district, office, government, or any device whatever having governmental functions, power or authority, such governing authority is hereby authorized to abolish same. . . ."
The framers of the Louisiana Constitution of 1974 expanded the concept contained within Article XIV, Section 46 (A), and carried this provision over into Article VI, Section 15, of that document as follows:
 The governing authority of a local governmental subdivision [which is now the Ascension Parish Council] shall have general power over any agency[1] heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency.
Thus, the framers of the 1921 and 1974 Constitutions granted to the Ascension Parish Council — the successor-in-interest to the 1948 Ascension Parish Police Jury which created the drainage districts — more than the power to abolish the drainage districts or the right to require from them prior approval before levying taxes or issuing bonds. Article VI, Section 15, permits the Ascension Parish Council to "have general power over any agency heretofore or hereafter created by it. . . ." "General" is defined in Merriam-Webster's Collegiate Dictionary, Tenth Ed.
as "involving, applicable to, or *Page 3 
affecting the whole." This word implies that the framers intended that the Parish Council, again in its capacity as successor-in-interest to the Police Jury, would manage, oversee, and control those agencies that its predecessor, the Police Jury, had created.
The Ascension Parish Charter in Section 4-12 (h) reflects the language set forth in the Constitutions cited above. Section 4-12 (h) provides that the "governing authority may: h) [b]y ordinance, establish, merge, consolidate and/or abolish, special districts. . . ." Thus, the Constitution and the Charter of Ascension Parish clearly vest the Ascension Parish Council with the power and authority to regulate, oversee and control or even abolish the East and West Ascension Gravity Drainage Districts.
This view is well supported not only by the referenced Constitutions and the Ascension Parish Charter, but also by logic. As stated above, Article VI, Section 15 of the Louisiana Constitution of 1974 allows the Ascension Parish Council to exercise "general power" over the East and West Ascension Gravity Drainage Districts. This Article stands for the important principle that a state statute is inferior to and bound by the supreme authority of the Louisiana Constitution, since a statute of the Louisiana Legislature cannot supersede any provision of the Louisiana Constitution. It would therefore follow that any exercise of power that involved something less than the abolition of the drainage districts would be permitted under the specific terms of Article VI, Section 15, under the Latin legal maxim, ineo quod plus sit, simper inest et minus ("the greater includes the lesser").
Accordingly, Art. VI, Section 15, Section 4-12 of the Ascension Parish Charter and sound legal reasoning support the proposition that the Ascension Parish Council has general power over any agency, including drainage districts, it creates.[2] In practical terms, the Parish Council may pass an ordinance to abolish, trump or nullify the action of drainage districts. In matters financial, the drainage districts, according to both the Constitution and Charter, must seek from the Parish Council, prior approval, before it levies any tax or charge or issues any bond. The powers enumerated above in the Constitution and the Charter are specifically reserved to the Parish Council, and not the President.[3] Finally, the Constitution does not place any time constraints upon the Parish Council's exercise of its rights. *Page 4 
In closing, one caveat is worth mentioning. Although I believe this letter to be well-reasoned, it does constitute a second legal opinion on an unsettled area of the law. I note that the first opinion you requested reached a different conclusion on the same question. Under such circumstances, caution dictates that the issue be decided definitively by a Court of competent jurisdiction in a Declaratory Judgment Action before the Parish Council acts. A final judgment recognizing the Parish Council's general power over the drainage districts would only serve to enhance the power of the Parish Council and remove all doubt about whether the Council has the authority described herein.
I hope this opinion adequately responds to your request. If you have any further inquiries, or if I can be of further assistance to you in any other way, please do not hesitate to contact me.
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 By:________________________
 Christopher D. Matchett
 Assistant Attorney General
[1] In Brasseaux v. Vermilion Parish Police Jury,361 So.2d 35 (La.App. 3d Cir. 1978), writ denied, 363 So.2d 535, the Court held that a drainage district falls within the meaning of "agency" as used in Article VI, Section 15 of the Louisiana Constitution of 1974.
[2] Atty. Gen. Op. No. 77-1394 dealt with the same issue, but reached a different result. However, Atty. Gen. Op. No. 77-1394 is distinguishable from this opinion because the law relied upon in it has since been amended or repealed or has no applicability here.
[3] Under Section 3-04 of the Charter of Ascension Parish, the President may, of course, veto any ordinance within ten (10) days after enactment. The members of the governing authority must be given notice of the veto and an opportunity to override it at a meeting within 10 days of the President's action.